**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DR ACQUISITION CORP., THE DOE RUN RESOURCES CORPORATION, THE RENCO GROUP, INC. and IRA L. RENNERT, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>FLUOR CORPORATION, DRIH CORPORATION (f/k/a DOE RUN INVESTMENT HOLDINGS CORPORATION), and APPALACHIA HOLDING COMPANY (f/k/a A.T. MASSEY COAL COMPANY), )<br><br>Defendants. ) | Case No.  4:12-CV-162 |

**COMPLAINT**

Plaintiffs DR Acquisition Corp. ("DRAC"), The Doe Run Resources Corporation ("DRRC"), The Renco Group Inc. ("Renco"), and Ira L. Rennert for their Complaint allege upon knowledge with respect to themselves and their own acts and upon information and belief with respect to all other matters, as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs bring this action pursuant to 28 U.S.C. § 2201, for a declaratory judgment that they have no obligation to indemnify Fluor Corporation ("Fluor"), DRIH Corporation (formerly known as the Doe Run Investment Holdings Corporation) ("DRIH") and Appalachia Holding Company (formerly known as, A.T. Massey Coal Company ("A.T. Massey,") and, together with Fluor and DRIH, the "Defendants") for certain liabilities to personal-injury plaintiffs that were or may be incurred by Defendants as a result of the operation of a primary lead smelter in Heculaneum, Missouri (the "Smelter").  Plaintiff DRRC also seeks

damages from Defendants which DRRC incurred as a result of its having discharged liabilities properly belonging to Defendants, which arose out of Defendants' operation of the Smelter.

2.      Defendants have claimed indemnification from Plaintiffs for liabilities Defendants incurred as a result of state court judgments entered against them in the Circuit Court of the City of St. Louis Missouri, after a July 2011 jury-trial on personal-injury claims.  Those judgments, aggregating more than $358,000,000 in compensatory damages and punitive damages (the "Judgments"), were entered in favor of sixteen personal-injury plaintiffs. Defendants also seek indemnification for pending claims in which additional state court plaintiffs seek similar damages, which have not yet been tried.

3.      Defendants have claimed that they are entitled to be indemnified by DRAC according to the terms of a 1994 Stock Purchase Agreement (the "SPA"), pursuant to which DRAC, a holding company owned by Plaintiff Renco, acquired all of the issued and outstanding stock of the St. Joe Minerals Corporation ("St. Joe").  Prior to the stock sale to DRAC, St. Joe, together with Fluor and with various other affiliates of Fluor, had owned and operated the Smelter.  However, Defendants' rights to contractual indemnification under the SPA are strictly limited.  The relevant indemnification provision of the SPA does not provide <u>any</u> right of indemnification to A.T. Massey for claims arising out of the operation of the Smelter, and provides indemnification to Fluor or DRIH only to the extent that the liabilities for which they seek indemnity arise out of the operation of the Smelter <u>and</u> as a result of those two entities "having been a general partner" in a partnership which, at one time, owned and operated the Smelter.  As discussed in more detail below, the jury that rendered the Judgments found Fluor liable for its own tortious and willful conduct, not for its legal status as a partner in a partnership.

4.      Further, even assuming that under the SPA, any of the Defendants have any entitlement to indemnification, any such indemnification is further limited in that (i)

indemnity to A.T. Massey and DRIH would be available only for claims that are covered by insurance and then, only to the extent of insurance proceeds actually received by DRAC (none of which have been received) and (ii) indemnity to any Defendants is available only after all applicable insurance policies are exhausted and only to the extent the proceeds of such policies are inadequate to satisfy otherwise indemnifiable amounts.

5.      Defendants have also claimed common-law rights to indemnity, as against, DRAC, DRRC, Renco, and Rennert.  However, under applicable law, any purported rights of Defendants to contribution or indemnity were extinguished by a settlement Plaintiffs reached with the personal-injury plaintiffs who obtained the Judgments, pursuant to which Plaintiffs were given releases.  In addition, because any indemnity rights against DRAC are expressly addressed by the SPA, Defendants can have no common-law claims for indemnification.

6.      The dispute between the parties is ripe and justiciable.

7.      Plaintiff DRRC also seeks damages for contribution or indemnification which it incurred by settling claims against Fluor, A.T. Massey, and DRIH and obtaining releases on their behalf.

### THE PARTIES AND THEIR CITIZENSHIP

#### A.      The Plaintiffs

8.      Plaintiff Renco is a privately-held corporation organized and existing under the law of the state of New York with its principal place of business in that state.  It is thus a citizen of New York for purposes of diversity of citizenship.  It owns all of the outstanding shares of Plaintiff DRAC.

9.      Plaintiff DRAC is a privately-held corporation organized and existing under the law of the state of Missouri with its principal place of business in that state.  It thus is a citizen of Missouri for purposes of diversity of citizenship.  It owns all of the outstanding common shares of DRRC.

10.     Plaintiff DRRC is a privately-held corporation organized and existing under the law of the state of New York, with its principal place of business in the state of Missouri.  It is thus a citizen of New York and of Missouri for purposes of diversity of citizenship.

11.     Plaintiff Ira L. Rennert is an individual domiciled in the State of New York.  He is therefore a citizen of the state of New York for purposes of diversity of citizenship. He has an ownership interest in Renco.

**B.**      **The Defendants**

12.     Defendant Fluor is a publicly-traded corporation that was incorporated in 2000.  Defendant Fluor is organized and existing under the laws of the state of Delaware, and has its principal place of business in the state of Texas.  Fluor is therefore a citizen of Delaware and of Texas for purposes of diversity of citizenship.

13.     Defendant DRIH, formerly known as Doe Run Investment Holding Corporation, is a corporation organized and existing under the law of the state of Delaware, with its principal place of business in a state other than New York or Missouri.  It is therefore a citizen of a state or states other than New York or Missouri for purposes of diversity of citizenship.

14.     Defendant Appalachia Holdings, formerly known as A.T. Massey Coal Co., is a corporation organized and existing under the law of the state of Virginia, with its principal place of business in the state of Virginia.  It is therefore a citizen of a state or states

other than New York or Missouri for purposes of diversity of citizenship.  A.T. Massey changed its name to Appalachia Holding Company in August 2011.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a).   All parties are citizens of the United States for diversity purposes.  The citizenship of each plaintiff is diverse from the citizenship of each defendant, as stated in paragraphs 8 through 14 of this Complaint.

16.     Each defendant is subject to personal jurisdiction in this district because:

(a)     Fluor has conducted business in Missouri, including appearing in and defending civil actions brought in this state against "Fluor Corporation" and making demands for indemnification related to such civil actions.  This action arises from those activities of Fluor.

(b)     Appalachia Holdings, under its former name A.T. Massey Coal Co., was at one time a general partner in a partnership named The Doe Run Company and as a member of that partnership conducted the business of mining and smelting lead in Missouri.  It has been named as a defendant in civil actions in Missouri and has made, in Missouri, demands for indemnification related to those civil actions.  This action arises from those activities of Appalachia Holdings or its predecessor-in-interest.

(c)     DRIH, under its former name Doe Run Investment Holding Corporation, was at one time a general partner in a partnership named The Doe Run Company and as a member of that partnership conducted the business of mining and smelting lead in Missouri.  It has been named as a defendant in civil actions in Missouri and has made, in

Missouri, demands for indemnification related to those civil actions.  This action arises from those activities of DRIH.

17.     The amount in controversy exceeds $75,000 exclusive of interest and costs.  Venue in this district is proper under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this district, and each defendant is a resident of this district under 28 U.S.C. § 1391(c), in that each is subject to personal jurisdiction here, as set out in paragraph 10 of this Complaint.

## FACTUAL ALLEGATIONS

A.      **The Stock Purchase Agreement**

18.     The underlying personal-injury claims which resulted in the Judgments for which Defendants have sought indemnification arise from the operation of the Smelter.  The personal-injury plaintiffs' claims resulted from the period of Defendants' involvement with the Smelter, which ran from 1981 until April 1994.

19.     In or about 1986, Fluor caused the Smelter and other components of its lead business to be contributed to a partnership called the Doe Run Company (the "Partnership"). At various times and for varying durations of time, each of Fluor, DRIH and A.T. Massey were general partners of the Partnership.  In litigation relating to Herculaneum, Fluor has taken the position that it was a partner for only one day – May 25, 1990.

20.     Effective February 4, 1994 Fluor and DRAC, a wholly owned subsidiary of Renco, entered into the SPA.  The SPA provided that DRAC would acquire 100% of the shares in St. Joe, which was at that time, an affiliate of Fluor.  A true and correct copy of the SPA with selected schedules is attached hereto as Exhibit [1].  The SPA was first amended on

April 7, 1994.  A true and correct copy of the First Amendment to the SPA is attached hereto as Exhibit [2].  The transaction closed on or about April 7, 1994.

21.  On March 25, 1994, in anticipation of the sale of St. Joe, Fluor caused its affiliate DRIH to transfer its interests in the Partnership to St. Joe.  At that point, St. Joe owned all of the interests of the former partners in the Partnership, resulting in the Partnership being dissolved by operation of law.

22.  The prospective transaction between Fluor and DRAC was structured as a stock sale, by which certain assets would be withdrawn from St. Joe prior to the sale transaction, the name of St. Joe would be changed to DRRC, and all of the shares in St. Joe (now named DRRC) would be acquired by a newly-formed Renco subsidiary, DRAC.  The rights and obligations *inter se* of Fluor, its affiliates, DRAC, and DRRC resulting from the transaction were defined by the SPA.[1]

23.  The parties agreed to eliminate the obligations owed by St. Joe or the Doe Run Company partnership to Fluor and its affiliates.  Specifically, Section 2.3 of the SPA provided in part:  "Except as listed on Schedule 2.3 [there was no schedule 2.3], all intercompany indebtedness and obligations between St. Joe, any St. Joe Subsidiary or Doe Run on the one hand and Seller [Fluor] or any of its remaining Affiliates on the other hand, shall be eliminated prior to the Closing and no further amounts shall be owing in respect thereof."

24.  In the SPA, DRAC undertook limited and specific indemnity obligations.  Specifically, DRAC's indemnity obligations are limited to "Losses" (defined as "liabilities, claims, damages, losses, costs or damages") arising out of five enumerated categories of claims.  The first three categories of indemnification relate to Losses caused by breaches of

---

[1] Section 13.11 of the SPA provides that the SPA "shall be construed in accordance with, and governed by, the internal laws of New York excluding its conflicts of laws provisions."

representations, warranties, covenants or obligations of DRAC as set forth in the SPA and are not relevant to the disputes between the parties.

25.     The fourth category of indemnification, Section 12.1(iv), is for "*claims relating to the Lead Business* [a defined term that included the Herculaneum Smelter and other assets used in the production of lead] which are asserted *against either Seller* [Fluor] *or Doe Run Investment Holding Corporation* [DRIH] *by reason of such entity having been a general partner* of [the Partnership]"  *See* Exh. [1] at 52; Exh. [2] at 5-6.  (Emphasis supplied).

26.     The fifth category of indemnification, Section 12.1(v), is for claims against a group of specifically identified "Excluded Subsidiaries, arising out of events which occur on or prior to the Closing Date" and specifically limits any indemnity obligations in respect of such claims to those claims that are "a covered claim under St. Joe's insurance coverage, as listed on Schedule 6.6(a)" and then "only to the extent of insurance proceeds actually received."

27.     Section 12.3 of the SPA further limits DRAC's indemnity obligations under Section 12.1(iv) and (v) by providing that such obligations  "shall not be deemed to create any rights of subrogation or other rights in any insurer or third party and shall not apply to any amounts covered by Insurance of the Indemnified Party or Indemnifying Party."

28.     Thus, according to the plain meaning of Section 12.1, DRAC has (i) no obligation to indemnify Fluor or DRIH for liabilities unrelated to the Lead Business; (ii) no obligation to indemnify either Fluor or DRIH for claims, even if they do arise from the Lead Business, unless those claims also arise as a result of Fluor or DRIH "having been a general partner" in Partnership; (iii) no obligation to indemnify A.T. Massey for claims arising from the Lead Business, because A.T. Massey is not an enumerated entity in Section 12.1(iv); and (iv) no

obligation to indemnify Fluor, A.T. Massey or DRIH to the extent that any judgment or obligation for which they seek indemnity is covered by insurance.

**B.    Personal Injury Litigation Relating To Operation Of The Smelter**

29.    Beginning in 1995, lawsuits have been brought against various parties, including Plaintiffs, Fluor, A.T. Massey, and DRIH, arising from the operation of the Smelter.

**1.    The *Alexander/Pedersen/Heilig* Litigation**

30.    In 2005, certain residents of Herculaneum, in Jefferson County Missouri, filed claims against Fluor, A.T. Massey, DRIH, DRRC, Renco, and others in the Missouri Circuit Court, Twenty-Second Judicial Circuit in the City of St. Louis, Missouri, for alleged injuries arising from the operation of the Smelter, including the period 1981 through 1994 (the "*Alexander/Pedersen/Heilig* Litigation").   The plaintiffs brought claims for negligence, strict liability, trespass, battery, and product liability.   In general, the factual allegations underlying each of these claims were that toxic emissions from the Smelter caused them injury.

31.    DRRC, DRAC, Renco and Rennert engaged in mediation with all of the personal injury plaintiffs represented by certain counsel.   With the help of an experienced mediator, the parties were able to reach agreement on terms for settlement with all of these plaintiffs on December 13, 2010.  The settlement was later effected.  Full and complete releases from these plaintiffs were obtained in favor of DRRC, DRAC, Renco and Rennert.

32.    Fluor, A.T. Massey, and DRIH were represented at the mediation that led to these settlements, and were encouraged by Plaintiffs to meaningfully participate in the settlement process.  However, Fluor, A.T. Massey, and DRIH all refused to settle, or to make any meaningful contribution to a joint settlement, and the claims of sixteen of the plaintiffs against Fluor, A.T. Massey, and DRIH proceeded to trial.

33.     In July 2011, after a jury trial, the jury issued a verdict which found Fluor, DRIH, and A.T. Massey liable to each of the 16 plaintiffs for a total of $38,527,186.00 in compensatory damages and $320,000,000.00 in punitive damages (as indicated above, the "Judgments").  These judgments will be reduced under R.S.Mo. § 537.060 by amounts paid to those plaintiffs by Plaintiffs here and others in their good faith settlements with these same state court plaintiffs.

34.     In holding against Fluor, the jury found that Fluor "had actual, participatory, and total dominion and control of partners of DRIH and Leadco Investments, Inc. and exercised such dominion and control so DRIH and Leadco Investments, Inc. had no separate mind, will, or existence of their own but were mere conduits for defendant Fluor Corporation." Thus, the award against Fluor was not for its legal status as a general partner in the Partnership that ran the Smelter; rather, the jury determined that Fluor controlled and dominated the Partnership such that it should be held directly liable for its own volitional conduct.

35.     The jury was instructed that if it found in favor of plaintiffs with respect to compensatory damages, it could then "find that defendant[s]" are "liable for punitive damages," if it "believe[d] that "defendant[s] … showed complete indifference to or conscious disregard for the safety of others."

36.     The same instruction provided that if the jury found the defendants liable for punitive damages, in accordance with applicable Missouri law, the jury would "be given further instructions for assessing the amount of punitive damages in [a] second stage of the trial." Subsequently, the court held the second stage of the trial at which the jury assessed the amount of punitive damages to be awarded against Fluor, DRIH, and A.T. Massey.

2.      **Settlements And Other Pending Litigation**

37.     To date, Plaintiffs have settled additional personal-injury claims arising from operation of the Smelter (the "Settled Litigation") and, in doing so they have obtained releases for themselves as well as for Fluor, DRIH and A.T. Massey.  Fluor, DRIH, and A.T. Massey did not contribute to these settlements.

38.     Currently, there are more than forty personal-injury claims pending against Fluor, DRIH, and A.T. Massey (the "Remaining Litigation").

C.      **The Defendants' Demands For Indemnification**

39.     In various correspondence, Fluor, DRIH, and A.T. Massey have sought indemnification from DRAC, DRRC, Renco, and Rennert for their respective liabilities under the Judgments and for the Remaining Litigation.  Plaintiffs have denied any duty to indemnify.

40.     In a Form 10-Q, filed by Fluor with the United States Securities and Exchange Commission on August 4, 2011 (after the Judgments), Fluor has asserted that "it believes it is entitled to indemnification under the sales agreement [the SPA] for each of the matters raised in these lawsuits."

41.     On December 6, 2010, before the commencement of the 2011 trial in the *Alexander/Pedersen/Heilig* Litigation, Fluor, DRIH, and A.T. Massey filed motions for leave to amend their answers in various actions pending in the Circuit Court for the City of St. Louis, including the *Alexander/Pedersen/Heilig* Litigation.  In those motions, Fluor, DRIH and Massey requested leave to file cross-claims in those actions, seeking indemnification from DRRC, DRAC, Renco, and Rennert.  These putative cross-claims rested on various legal theories, including contractual indemnity and non-contractual indemnity.  The putative claims against Mr. Rennert rested on the basis of his ownership interest in Renco and assertions that he is personally liable for liabilities of Renco, DRAC, and DRRC under the theory of piercing the corporate veil.

Fluor, DRIH, and Massey chose not to present their motions for leave to amend to the circuit court prior to the 2011 trial.  Similar motions remain pending in some of the Remaining Litigation.

42.     In various correspondence, DRRC has demanded that Defendants pay DRRC for such amounts representing Defendants' proportionate share of responsibility for any amounts paid by DRRC to settle the Settled Litigation on behalf of all defendants in those Settled Litigation.  Defendants have refused to make any such payments.

43.     Effective March 14, 2011, all parties to this action entered into a Cooperation, Standstill, Tolling and Joint Defense Agreement, pursuant to which their respective claims for contribution and indemnity would be deferred until a date after the 2011 trial. Mediation was a precondition to any prosecution by any party against the others of claims for indemnification or contribution.

44.     On January 17, 2012, the parties to this action participated in a mediation in an attempt to resolve the claims for contribution and indemnity.   The mediation was unsuccessful and, accordingly, the Cooperation, Standstill, Tolling and Joint Defense Agreement expires as of January 31, 2012.

## FIRST CAUSE OF ACTION

### (Contribution, Indemnification and Damages)

45.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46.     From 2008 to date, Plaintiffs have entered into settlement agreements with plaintiffs in the Settled Litigation who asserted tort claims against Plaintiffs and Defendants here, alleging that they had been injured by reason of operations of the Smelter.  The claims that were

settled were based on theories of negligence, trespass, nuisance and/or strict liability in tort and sought joint and several liability against the defendants in the Settled Litigation.

47.     In effecting these settlements, DRRC paid certain amounts to the plaintiffs in the Settled Litigation.  The settlement agreements contained confidentiality provisions limiting disclosure of their terms, including the amounts paid.  In many of these settlements, with the knowledge of Defendants, DRRC secured full and complete releases in favor of Defendants and their predecessors.  Fluor, A.T. Massey, and DRIH, however, did not contribute to the settlements with the plaintiffs in the Settled Litigation.

48.     DRRC is entitled to contribution or equitable indemnification from Defendants Fluor, A.T. Massey, and DRIH in accordance with their responsibility for the claims settled and to damages in such amounts as determined at trial.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment)

49.     DRAC repeats and realleges the allegations set forth in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

50.     By reason of the foregoing, an actual justiciable controversy exists between the parties.

51.     According to the plain meaning of Section 12.1(iv) of the SPA, DRAC's indemnification obligation to Fluor applies only to those claims that *both* relate to the Lead Business *and* arise by reason of Fluor having been a general partner in the Partnership.

52.     The claims against Fluor that resulted in the Judgments against Fluor in the *Alexander/Pedersen/Heilig* Litigation were not claims arising by reason of Fluor having been a general partner in the Partnership.  Rather, the jury in the *Alexander/Pedersen/Heilig* Litigation found that, Fluor, "in the exercise of its dominion and control over the Partnership, allowed

[plaintiffs] … to be exposed to unsafe levels of lead" and "was thereby negligent, and … such negligence directly caused or directly contributed to cause damages to plaintiff[s]."

53.     In the alternative, to the extent Fluor is entitled to indemnification by DRAC for the Judgments against Fluor, pursuant to Section 12.1(iv) of the SPA, any such indemnification is limited to Fluor's conduct in the short period of time during which it was a partner in the Partnership.

54.     Accordingly, DRAC is entitled to a declaratory judgment declaring that:

(a)     Fluor has no right to indemnification for the Judgments under Section 12.1(iv) of the SPA because it was not held liable as a result of having been a general partner in the Partnership; and, in the alternative,

(b)     to the extent Fluor was or is held liable as a result of having been a general partner in the Partnership, any contractual indemnity obligation of DRAC to Fluor under Section 12.1(iv) is limited to the liability attributable to Fluor during its brief tenure as a general partner of the Partnership.

## THIRD CAUSE OF ACTION

### (In The Alternative: Declaratory Judgment)

55.     DRAC repeats and realleges the allegations set forth in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

56.     By reason of the foregoing, an actual justiciable controversy exists between the parties.

57.     According to the plain meaning of Section 12.1(iv) of the SPA (as amended) DRAC's indemnification obligation is limited to claims relating to the Lead Business that are asserted only against either Fluor or DRIH.  Section 12.1(iv) contains no indemnification obligation for claims brought against A.T. Massey.

- 14 -

58.     According to the plain meaning of Section 12.1(v), DRAC's indemnification obligation with respect to "Excluded Subsidiaries," such as DRIH and A.T. Massey, is limited to claims covered under St. Joe's insurance coverage, and only to the extent of insurance proceeds actually received.  DRAC has not received any insurance proceeds in respect of claims against DRIH or A.T. Massey.

59.     Accordingly, DRAC is entitled to a declaratory judgment declaring that:

(a)     DRAC has no indemnity obligations to A.T. Massey under Section 12.1(iv) of the SPA because A.T. Massey is not an indemnified party under Section 12.1(iv); and, in the alternative,

(b)     to the extent DRAC owes any indemnity obligations to DRIH or A.T. Massey for liabilities incurred as a result of personal injury arising from operation of the Smelter, including in respect of the Judgments, any such indemnity obligation of DRAC to DRIH or to A.T. Massey is limited by Section 12.1(v) of the SPA to claims that are covered by St. Joe's insurance (as set forth in Schedule 6.6(a) of the SPA) and then, only to the extent of insurance proceeds actually received by DRAC in respect of such claims.

## FOURTH CAUSE OF ACTION

### (In the Alternative: Declaratory Judgment)

60.     DRAC repeats and realleges the allegations set forth in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

61.     By reason of the foregoing, an actual justiciable controversy exists between the parties.

62.     Under the plain meaning of Section 12.3 of the SPA, DRAC has no indemnity obligations to the extent that claims for which indemnity is sought are covered by

insurance, and, therefore, Defendants are required to make good faith efforts to obtain insurance coverage before any purported indemnity obligation of DRAC is triggered.

63.     Accordingly, DRAC is entitled to a declaratory judgment declaring that:

(a)     to the extent DRAC owes any indemnity obligations to Fluor, DRIH or A.T. Massey, for liabilities incurred as a result of personal injury arising from operation of the Smelter, including in respect of the Judgment, any such indemnity obligation is triggered only upon the exhaustion by Fluor, DRIH and A.T. Massey of good faith efforts to obtain insurance coverage and

(b)     if coverage is obtained, then DRAC's indemnity obligations are limited to the extent that such coverage is insufficient to satisfy any amounts to which Fluor, DRIH, or A.T. Massey are otherwise entitled to indemnification pursuant to the SPA and applicable law.

## FIFTH CAUSE OF ACTION

### (In the Alternative: Declaratory Judgment)

64.     DRAC repeats and realleges the allegations set forth in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

65.     By reason of the foregoing, an actual justiciable controversy exists between the parties.

66.     The SPA, by its express terms, is governed by the law of New York.

67.     New York law prohibits indemnification for willful or purposeful tortious conduct, including for punitive damages.

68.     The Judgments were awarded as a result of Defendants willful and purposeful tortious conduct, including for punitive damages.

69.     Accordingly, DRAC is entitled to a declaratory judgment declaring that: to the extent DRAC owes any indemnity obligations in respect of the Judgments to Fluor, DRIH, or A.T. Massey, those obligations are unenforceable with respect to damages awarded in the Judgments for Defendants' willful or purposeful tortious conduct, including for punitive damages.

### SIXTH CAUSE OF ACTION

**(Declaratory Judgment)**

70.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

71.     By reason of the foregoing, an actual justiciable controversy exists between the parties.

72.     Defendants have demanded that Plaintiffs indemnify them for the liabilities incurred as a result of the Judgments and any potential liabilities in connection with the Remaining Litigation irrespective of the indemnification provisions in the SPA.   Although Defendants have styled such demands under a variety of theories, such as equitable indemnification and promissory estoppel, all such claims seek non-contractual indemnity or contribution from Plaintiffs.

73.     Any indemnity obligations of DRAC to Defendants are expressly addressed in the SPA, as part of a bargained-for exchange.   Having negotiated for and obtained provisions addressing contractual indemnification, Defendants have no right to non-contractual indemnity from DRAC above, beyond or in addition to the rights granted by the contract and no right to contractual indemnification from DRRC, Renco or Rennert as non-parties to the SPA.

74.     R.S. Mo. § 537.060 provides, in pertinent part, that a good faith settlement by one alleged tort-feasor "shall discharge the tort-feasor to whom it is given from all liability for contribution or non-contractual indemnity to any other tort-feasor."

75.     Each of DRAC, DRRC, Renco and Rennert settled the claims brought against them in the *Alexander/Pedersen/Heilig* Litigation and obtained releases from the plaintiffs, in that litigation, which releases were given in good faith and negotiated at arms-length.  As a result, any right to contribution or non-contractual indemnity that Defendants might claim against Plaintiffs is discharged by operation of law.

76.     In addition, any right to indemnification from DRRC (formerly St. Joe) was limited or discharged by Section 2.3 of the SPA, which provides in part, "all intercompany indebtedness and obligations between St. Joe, any St. Joe Subsidiary or Doe Run on the one hand and Seller [Fluor] or any of its remaining Affiliates on the other hand, shall be eliminated prior to the Closing and no further amounts shall be owing in respect thereof."  In particular, any claim that DRRC has an indemnity obligation to Fluor, A.T. Massey and/or DRIH by reason of their past status as members of The Doe Run Company partnership and the dissolution of that partnership is discharged by the SPA and Section 2.3 thereof.

77.     Accordingly, Plaintiffs are entitled to a declaratory judgment against Defendants that Defendants are not entitled to contractual indemnification under the SPA from DRRC, Renco, or Rennert and are not entitled to non-contractual indemnification or contribution from any of the Plaintiffs with respect to claims for personal injury arising from operation of the Smelter, including the *Alexander/Pedersen/Heilig* Litigation, including such judgments as have been or may be entered in those cases.

## SEVENTH CAUSE OF ACTION

### (In The Alternative: Declaratory Judgment)

78. DRAC repeats and realleges the allegations set forth in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

79. By reason of the foregoing, an actual justiciable controversy exists between the parties.

80. A party seeking indemnification has an obligation to mitigate damages. Defendants did not mitigate their damages. Rather, Defendants acted recklessly and in bad faith and thereby exacerbated their damages, by refusing to engage in meaningful settlement negotiations of the underlying claims and refusing to participate in such settlements, despite repeated entreaties by Plaintiffs that they do so.

81. As a result of Defendants' bad-faith and reckless failure to mitigate their damages, they have forfeited any rights to indemnification from Plaintiffs.

82. Accordingly, all Plaintiffs are entitled to a declaratory judgment declaring that: to the extent Plaintiffs have any indemnity obligations to Fluor, DRIH, or A.T. Massey in respect of the Judgments, any such obligations are forfeit because of Defendants' failure to mitigate damages.

## EIGHTH CAUSE OF ACTION

### (In The Alternative: Declaratory Judgment)

83. DRAC repeats and realleges the allegations set forth in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

84. By reason of the foregoing, an actual justiciable controversy exists between the parties.

85.     Prior to 2000, Fluor Corporation was the name of a corporation that was renamed Massey Energy Company in that year.  The Fluor Corporation in existence prior to 2000 ("Old Fluor") was the Fluor Corporation that was a party to the SPA.  That corporation, however, was not a party to the *Alexander/Pedersen/Heilig* Litgation.

86.     In 2000, Fluor Corporation undertook a reverse spin-off of certain parts of its business by which it created a new entity, named Fluor Corporation ("New Fluor") that had not been and is not a party to the SPA.

87.     The party against which judgment was entered in the *Alexander/Pedersen/Heilig* Litigation is New Fluor, which is not the party with which DRAC contracted pursuant to the SPA and has no rights thereunder.

88.     Under Section 13.14 of the SPA, no assignment of the right to indemnification was permissible without DRAC's consent.  Neither Old Fluor nor New Fluor requested or obtained DRAC's consent to the assignment of Old Fluor's rights under the SPA, including Old Fluor's purported rights to indemnification under the SPA.

89.     Under Section 12.5 of the SPA, any indemnification rights under the SPA do not run in favor of insurers or third parties.

90.     Accordingly, DRAC is entitled to a declaratory judgment declaring that: Defendant Fluor Corporation – that is, New Fluor – has no right to indemnification from DRAC because under the SPA it is not a party to the SPA.

**RELIEF DEMANDED**

WHEREFORE,

(i)     Plaintiff DRRC respectfully requests that this Court enter judgment in its favor and award it damages for contribution and equitable indemnification against each of Fluor, A.T. Massey, and DRIH;

(ii)    Plaintiffs DRAC, DRRC, Renco, and Rennert respectfully request that this Court enter judgment in Plaintiffs' favor and declare the following:

(a)     Fluor has no right to indemnification for the Judgments under Section 12.1(iv) of the SPA because it was not held liable as a result of having been a general partner in the Partnership; and, in the alternative,

(b)     To the extent Fluor was or is held liable as a result of having been a general partner in the Partnership, any contractual indemnity obligation of DRAC to Fluor under Section 12.1(iv) is limited to the liability attributable to Fluor during its brief tenure as a general partner of the Partnership.

(c)     DRAC has no indemnity obligations to A.T. Massey under Section 12.1(iv) of the SPA because A.T. Massey is not an indemnified party under Section 12.1(iv); and, in the alternative,

(d)     To the extent DRAC owes any indemnity obligations to DRIH or A.T. Massey for liabilities incurred as a result of personal injury arising from operation of the Smelter, including in respect of the Judgments, any such indemnity obligation of DRAC to DRIH or to A.T. Massey is limited by Section 12.1(v) of the SPA to claims that are covered by St. Joe's insurance (as set forth in Schedule 6.6(a) of the SPA) and then, only to the extent of insurance proceeds actually received by DRAC in respect of such claims.

(e)      To the extent DRAC owes any indemnity obligations to Fluor, DRIH or A.T. Massey, for liabilities incurred as a result of personal injury arising from operation of the Smelter, including in respect of the Judgments, any such indemnity obligation is triggered only upon the exhaustion by Fluor, DRIH, and A.T. Massey of good faith efforts to obtain insurance coverage, and, if coverage is obtained, then DRAC's indemnity obligations are limited to the extent that such coverage is insufficient to satisfy any amounts to which Fluor, DRIH, or A.T. Massey are otherwise entitled to indemnification pursuant to the SPA.

(f)      To the extent DRAC owes any indemnity obligations in respect of the Judgments to Fluor, DRIH, or A.T. Massey, those obligations are unenforceable with respect to damages awarded in the Judgments for Defendants' willful or purposeful tortious conduct, including for punitive damages.

(g)      Defendants are not entitled to contractual indemnification under the SPA from DRRC, Renco, or Rennert and are not entitled to non-contractual indemnification or contribution from any of the Plaintiffs with respect to claims for personal injury arising from operation of the Smelter, including the *Alexander/Pedersen/Heilig* Litigation, including such judgments as have been or may be entered in those cases.

(h)      To the extent Plaintiffs have any indemnity obligations to Fluor, DRIH, or A.T. Massey in respect of the Judgments, any such obligations are forfeited because of Defendants' failure to mitigate damages, and

(i)      Defendant Fluor Corporation – that is, New Fluor – has no right to indemnification from DRAC because under the SPA it is not a party to the SPA; and

- 22 -

      (iii)     Plaintiffs DRAC, DRRC, Renco, and Rennert respectfully request that this Court award Plaintiffs their costs and fees associated with this action; and

      (iv)     Plaintiffs DRAC, DRRC, Renco, and Rennert respectfully request that this Court award Plaintiffs such other and further relief as this Court deems just and proper.

Dated: January 31, 2012             Respectfully submitted,

**DOWD BENNETT LLP**

By:  /s/  Edward L. Dowd, Jr.
Edward L. Dowd, Jr.  #28785MO
edowd@dowdbennett.com
James F. Bennett  #46826MO
jbennett@dowdbennett.com
Terrence J. O'Toole,  #23247MO
tjotoole@dowdbennett.com
James E. Crowe, III  #50031MO
jcrowe@dowdbennett.com
7733 Forsyth Blvd., Suite 1410
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)

Attorneys for Plaintiffs DR Acquisition Corp.,
The Renco Group, Inc., and Ira L. Rennert

and

**LEWIS, RICE, & FINGERSH, L.C.**

By:   /s/   Andrew Rothschild
Andrew Rothschild  #23145MO
arothschild@lewisrice.com
Richard A. Ahrens  #24757MO
rahrens@lewisrice.com
Thomas P. Berra, Jr.  #43399MO
tberra@lewisrice.com
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101-1311
(314) 444-7600 (telephone)
(314) 241-6056 (facsimile)

Attorneys for Plaintiff The Doe Run Resources
Corporation

and

**CADWALADER, WICKERSHAM & TAFT
LLP**

Jonathan M. Hoff
jonathan.hoff@cwt.com
Joshua R. Weiss
joshua.weiss@cwt.com
Martin S. Krezalek
martin.krezalek@cwt.com
(Motions for Admission *Pro Hac Vice* Forthcoming)
One World Financial Center
New York, New York  10281
(212) 504-6000 (telephone)
(212) 504-6666 (facsimile)

Attorneys for all Plaintiffs